IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSHUA P. OLGA, SR.,**

                      **Petitioner,**

                **v.**                                  **CASE NO. 19-3264-SAC**

**SHANNON MYERS,**

                        **Respondent.**

## MEMORANDUM AND ORDER

The case comes before the Court on petitioner Joshua P. Olga's petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, a prisoner incarcerated in a Kansas correctional facility, proceeds pro se. On April 16, 2020, this Court directed Respondent to file a Pre-Answer Response ("PAR") addressing the issue of timeliness. Respondent filed the PAR on July 24, 2020 (ECF No. 11). Under the Court's order, Petitioner had 30 days to file a reply to the PAR. Petitioner has not filed a reply or otherwise responded to the PAR.

**Background**

On August 2, 2004, Petitioner was convicted of one count of rape and one count of aggravated criminal sodomy. (Case No. 04-CR-440, Dist. Ct. of Sedgwick Cnty., Kan.). He was sentenced on September 30, 2004. He appealed, and the Kansas Court of Appeals affirmed his convictions and sentence on July 21, 2006. *State v. Olga*, 138 P.3d 417 (Table), 2006 WL 2043003 (Kan. App. 2006). The Kansas Supreme Court denied review on December 19, 2006. Petitioner then filed a motion to correct an illegal sentence in the trial court on January 24, 2007, which was

1

denied, with the Court of Appeals summarily affirming the denial on December 4, 2007, and the Kansas Supreme Court denying review on May 28, 2008. On June 30, 2008, Petitioner filed a post-conviction motion under K.S.A. 60-1507 in the District Court of Sedgwick County. (Case No. 08-CV-2555). His 60-1507 action was dismissed by the trial court as untimely. Mr. Olga appealed, and the Kansas Court of Appeals affirmed the dismissal on April 15, 2010. *Olga v. State*, 228 P.3d 441 (Table), 2010 WL 1610408 (Kan. App. 2010). The Kansas Supreme Court denied review on August 3, 2010. Petitioner filed a second action under K.S.A. 60-1507 on May 27, 2014. (Case No. 14-CV-1530). The Kansas Court of Appeals affirmed the trial court's denial of the motion on March 3, 2017. *Olga v. State*, 390 P.3d 128 (Table), 2017 WL 840296 (Kan. App. 2017). The Kansas Supreme Court granted review and remanded to the Court of Appeals for reconsideration in light of new case law. The Court of Appeals again affirmed the trial court's decision. *Olga v. State*, 437 P.3d 1029 (Table), 2019 WL 1412454 (Kan. App. 2019). The Supreme Court denied review on December 6, 2019. Petitioner filed this action on December 24, 2019.

**Analysis**

The statute of limitations for filing a habeas corpus petition under § 2254 is set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.

28 U.S.C. § 2244(d)(1).

The "limitation period shall run from" the "latest of" four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

2

>    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute further provides for tolling of the statute of limitations during the pendency of any "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). However, where a State post-conviction petition is rejected by the State court as untimely, it is not "properly filed" and does not toll the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *Artuz v. Bennett*, 531 U.S. 4, 11 (2000).

The allegations contained in Mr. Olga's petition do not support the use of any date later than the date Petitioner's sentence became final for calculating the limitation period. Petitioner's sentence became final on March 19, 2007, with the expiration of the time for seeking a writ of certiorari from the United States Supreme Court. *See* U.S. Sup. Ct. Rule 13. The one-year limitation period for filing a § 2254 petition began to run on March 20, 2007.

The limitation period was tolled under § 2244(d)(2) from March 20, 2007 until May 28, 2008 while Petitioner's motion to correct an illegal sentence was pending. It was not tolled when Petitioner filed his first K.S.A. 60-1507 motion because the state courts found that motion was untimely, making it not a "properly filed application for State post-conviction or other collateral review" under § 2244(d)(2).

The one-year statute of limitations for filing a § 2254 petition expired in June of 2009, more than ten years before Petitioner filed this action. Petitioner's § 2254 petition is untimely and is subject to dismissal.

Under very limited circumstances, the limitation period may be equitably tolled. *See Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Equitable tolling is available only "when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Id.* "Extraordinary circumstances that could warrant equitable tolling include 'when an adversary's conduct—or other uncontrollable circumstances—prevents a prisoner from timely filing.'" *Levering v. Dowling*, 721 F. App'x 783, 787–88 (10th Cir. 2018) (quoting *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). Such equitable tolling, however, is "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015) (quoting *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008)).

While Petitioner did not file a reply to the PAR, he did argue in his petition that he is entitled to equitable tolling. He asserts he experienced three extraordinary circumstances that should justify his failure to file in a timely manner. First, he claims his trial counsel was so constitutionally unprofessional . . . that no reasonable juror would have found Mr. Olga guilty." ECF No. 1, at 40. Petitioner does not explain how this circumstance caused him to miss the deadline for filing this federal habeas corpus action.

Second, Petitioner alleges he did not have adequate access to the law library at Lansing Correctional Center and received bad advice from the library supervisor. He states he was limited to using the law library every other day for an hour and was not allowed to check out law books. Further, he alleges 21 inmates at a time were in the library trying to use three computers and three

typewriters.  Lack of access to a law library does not generally provide a basis for equitable tolling. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (refusing to toll limitation period where petitioner claimed facility lacked all relevant statutes and case law and procedure to request specific materials was inadequate); *Gibson*, 232 F.3d at 808 ("a claim of insufficient access to relevant law . . . is not enough to support equitable tolling"); *Levering*, 721 F. App'x at 788 (limited time in the law library is not extraordinary circumstance justifying equitable tolling); *Weibley v. Kaiser*, 50 F. App'x 399, 403 (10th Cir. 2002) ("allegations regarding insufficient library access, standing alone, do not warrant equitable tolling").

Mr. Olga claims the library supervisor told him he could not file his K.S.A. 60-1507 action until his motion to correct an illegal sentence was resolved.  Ignorance of the law and reliance on bad advice does not justify equitable tolling.  *Marsh*, 223 F.3d at 1220-21 (ignorance of the law, reliance on assistance from others, and attorney error are not extraordinary circumstances justifying equitable tolling).  That said, even if Petitioner's first 60-1507 motion was not dismissed as untimely and legal tolling did apply, Mr. Olga's petition here would still be untimely.  The limitation period would have been tolled until August 3, 2010 and expired in July of 2011.

Last, Petitioner states he was "abandoned" by the attorney he hired to file his second 60-1507 motion. Petitioner alleges he paid the attorney $5,000 then the attorney stopped responding to Petitioner's phone calls or letters.  He further alleges he provided the attorney with legal materials, which were returned only after "considerable" delay.  However, Petitioner does not explain how this circumstance caused his failure to timely file this federal habeas petition.

None of the circumstances Petitioner describes are extraordinary such that equitable tolling is justified.

Mr. Olga's final argument is that the limitation period should be waived to prevent manifest injustice because he is actually innocent. "[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To make a credible showing of actual innocence, the prisoner must come forward with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* at 316. "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *McQuiggin,* 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327).

Petitioner argues his attorney did not call three "key witnesses" who would have "supported Mr. Olga's theory of defense that 'another dude did it [ ].'" ECF No. 1, at 35. He attaches an affidavit from one of the witnesses, Cecil Henry, who states that in January of 2003, he observed Mr. Olga's children sitting on either side of Olga's father, and his father "appeared" to have his hands "between the children's legs." ECF No. 1-1, at 34. The affidavit was signed in 2014. Petitioner alleges Bill Parker would have also testified "to the fact of catching the children's grandfather molesting the kids." ECF No. 1, at 9. He states Susan Middleton, his sister, would have testified that their father molested her. *Id.* This is neither new evidence nor is it evidence that Petitioner himself is innocent of sexually assaulting his children.

6

Petitioner further argues his attorney would not subpoena the victims' foster mother or their original counselor, who would have "contradicted the children's testimony at trial which would have put doubt in the Juror's mind that maybe the children were lying." *Id.* at 35.  Even accepting Mr. Olga's description of these witnesses' possible testimony and his speculation regarding the effect of such testimony, raising a doubt as to the victims' truthfulness is far from "show[ing] that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 327.  A juror reasonably could have believed the children in spite of this testimony. *See Brewington v. Miller*, 443 F. App'x 364, 368 (10th Cir. 2011) (finding a juror reasonably could have discounted the credibility of a potential witness and given no weight to her claim that petitioner was innocent).

Petitioner also claims his attorney did not investigate any of the State's witnesses or potential defense witnesses, and she refused to call certain character witnesses. ECF No. 1, at 35. Petitioner attaches affidavits from two of these potential character witnesses. *See* Affidavit of Huong Nguyen, ECF No. 1-1, at 27-29; Affidavit of Dinh Dinh, ECF No. 1-1, at 30-32. Both affidavits were signed in 2014, and neither provides any "new reliable evidence" of Petitioner's actual innocence. *Schlup*, 513 U.S. at 324. Both affidavits merely express the affiants' opinions as to Mr. Olga's character and care of his children.

Last, Petitioner argues his attorney "barred Mr. Olga from testifying of why he killed his father," which would have supported his defense that someone else abused his children. Petitioner asserts he killed his father because he caught his father molesting one of his children. As the Kansas Court of Appeals stated when considering the same arguments Mr. Olga makes here, "[e]ven if we assume this to be true, the fact that the grandfather may have also inappropriately

touched the children does not show that Olga was innocent." *Olga v. Kansas*, 437 P.3d 1029 (Kan. App. 2019), *review denied* (Dec. 6, 2019).

Because Petitioner's arguments fail to provide any evidence affirmatively demonstrating his innocence, he has not met his burden to invoke the miscarriage of justice exception to AEDPA's statute of limitations. *See Parks v. Cline*, 786 F. App'x 759, 763 (10th Cir. 2019); *Wilson v. Dowling*, 702 F. App'x 724, 726 (10th Cir. 2017).

**Conclusion**

The Court finds Petitioner exceeded the limitation period for filing this action and has failed to establish the extraordinary circumstances necessary to support equitable tolling or a colorable claim of actual innocence necessary to waive the statute of limitations.

**Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability ("COA") upon entering a final adverse order. A COA may issue only if the petitioner made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The failure to satisfy either prong requires the denial of a COA. *Id.* at 485. The Court finds nothing in the present record that suggests its ruling is debatable or an incorrect application of the law and therefore declines to issue a certificate of appealability.

**IT IS THEREFORE ORDERED** that this petition seeking relief under 28 U.S.C. § 2254 is dismissed as time-barred.

**IT IS SO ORDERED.**

DATED:  This 17th day of September, 2020, at Topeka, Kansas.

**s/_Sam A. Crow_____
SAM A. CROW
U.S. Senior District Judge**